UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| First Data Merchant Services Corporation, a Florida corporation, | ) ) ) | Court File No.: _____ |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| Community Finance Group, Inc., a Minnesota corporation, | ) ) ) | **COMPLAINT** |
| Defendant. | ) ) ) | |

## COMPLAINT

Plaintiff, First Data Merchant Services Corporation ("FDMS"), by and through its undersigned counsel, files its complaint against defendant, Community Finance Group, Inc. ("CFG"), a Minnesota corporation, and states and alleges as follows:

## PARTIES

1.      Plaintiff FDMS is a Florida corporation, with a principal place of business in Greenwood Village, Colorado.  FDMS is in the business of, among other activities, processing credit and debit card transactions on behalf of VISA™ and MasterCard™.

2.      Defendant CFG is a Minnesota corporation, with a principal place of business at 5747 W. Broadway Avenue, Crystal, Minnesota.

3.      TCF National Bank ("TCF") is a national banking association, with a principal place of business in Wayzata, Minnesota.  On March 4, 2009, TCF filed an interpleader action in this Court to interplead the funds identified below.  (*TCF National Bank v. First Data Merchant Services Corporation and Community Finance Group, Inc.*

Civil File No. 0:09-cv-00518 DSD/FLN.) Those funds rightfully belong to FDMS in accordance with the applicable agreement between CFG and FDMS.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.      Venue is proper in this Court under 28 U.S.C. § 1391 because the defendants reside in this District.

## FACTUAL BACKGROUND

**The Merchant Processing Agreement Between FDMS and CFG**

6.      On or about February 25, 2008, CFG executed a merchant processing application and agreement (including a Program Guide) with FDMS (collectively, the "Agreement"), pursuant to which FDMS agreed to process VISA™ and MasterCard™ credit card and debit card transactions for sales made by CFG.

7.      In the Agreement, CFG represented to FDMS that its average VISA™ and MasterCard™ transactions were in the amount of $350.00.

8.      Andrew Vilechik ("Vilechik"), general manager for CFG, signed the Agreement on behalf of CFG in two separate locations.

9.      The following appears immediately above Vilechik's first signature:

> Client acknowledges having received and read a copy of the Interchange Schedule (for card processing services), Program Guide (which includes terms and conditions for each of the services, Operating Procedures, Third-Party Agreements and Confirmation Page), and Merchant Processing Application

(consisting of Sections 1-13), as modified from time to time in accordance with the provisions of this Agreement, and agrees to be bound by all provisions as printed therein.

10.     The following appears immediately above Vilechik's second signature: "Client further acknowledges reading and agreeing to all terms in the Program Guide, which shall be incorporated into Client's Agreement."

11.     The Agreement required CFG to maintain a settlement account (also known as a demand deposit account "DDA") for the purposes of receiving the proceeds of its debit/credit card transactions, as well as funding its chargebacks.  *See* Program Guide at 10 & 35.  CFG maintained its settlement account with TCF.

**CFG's Responsibility And Liability For Chargebacks Under The Program Guide**

12.     Section 10.1 ("Chargebacks"), and 10.1.1 ("Generally"), of the Program Guide, provides in relevant part:

> Both the Cardholder and the Card Issuer have the right to question or dispute a transaction.  If such questions or disputes are not resolved, a Chargeback may occur.  A Chargeback is a card transaction that is returned to us by the Card Issuer.  As a result, we will debit your Settlement Account or settlement funds for the amount of the Chargeback.  It is strongly recommended that, whenever possible, you contact the Cardholder directly to resolve a disputed transaction or Chargeback, unless the dispute involves a Discover Cardholder, in which case Discover rules and regulations expressly prohibit you from contacting a Discover Cardholder regarding the dispute.  **You are responsible for all Chargebacks and related costs arising from your transactions.**

*See* Section 10.1.1 of the Program Guide (emphasis added).

13.   Section 19 ("Chargebacks") of the Program Guide provides, in relevant

part:

> **19.1**   [CFG] shall be responsible for reimbursing us [FDMS]
> for all transactions [CFG] submit[s] that are charged
> back.   See the Operating Procedures for additional
> information regarding Chargebacks and Chargeback
> procedures.

> **19.2**   [CFG] shall reimburse [FDMS] for any Chargebacks,
> return items, or other losses resulting from your failure
> to produce a Card transaction record requested by us
> within the applicable time limits.

*See* Section 19 of the Program Guide.

## Events Of Default Under The Program Guide

14.   Section 23 ("Term; Events of Default") of the Program Guide provides, in

relevant part:

> **23.4**   If any of the following events shall occur (each an
> "Event of Default"):

> > **23.4.4**   irregular Card sales by [CFG], excessive
> > Chargebacks or any other circumstances
> > which, in [FDMS'] sole discretion, may
> > increase [FDMS'] exposure for [CFG's]
> > Chargebacks or otherwise present a financial
> > or security risk to [FDMS]; or

> > **23.4.5**   any of [CFG's] representations or warranties
> > in this Agreement are breached in any
> > material respect or are incorrect in any
> > material respect when made or deemed to be
> > made; or

> > **23.4.11**   . . . then, upon the occurrence of . . . (2) any
> > other Event of Default, this Agreement may
> > be terminated by us [FDMS] giving not less
> > than 10 days' notice to you, and upon such

> notice all amounts payable hereunder shall
> be due and payable upon demand.

*See* Section 23 of the Program Guide.

**FDMS' Right To Indemnification From CFG Under The Program Guide**

15.  Section 26 ("Indemnification") of the Program Guide provides:

**26.1**  [CFG] agree[s] to indemnify and hold [FDMS] harmless from and against all losses, liabilities, damages and expense: (a) resulting from any breach of any warranty, covenant or agreement or any misrepresentation by you under this Agreement; (b) arising out of your or your employees' or your agents' negligence or willful misconduct, in connection with Card transactions or otherwise arising from your provision of goods and services to Cardholders; (c) arising out of your use of our Service; or (d) arising out of any third party indemnifications we are obligated to make as a result of your actions (including indemnification of any Association or Issuer).

**26.2**  [CFG] agree[s] to indemnify and hold [FDMS] harmless against all losses, liabilities and damages and expenses resulting from any breach of warranty, covenant or agreement or any misrepresentation by [CFG] under this Agreement or arising out of our or our employee's gross negligence or willful misconduct in connection with this Agreement.

*See* Sections 26.1 & 26.2 of the FDMS Program Guide.

5

**CFG Breaches The Program Guide And CFG Defaults Under The Program Guide**

16.     From February 2008 through and including early February 2009, CFG processed debit and/or credit card transactions with FDMS.

17.     On or about October 8, 2008, CFG accepted a VISA™ credit card transaction from Greg Carter ("Carter") in the amount of $99,999.99 (the "Carter Transaction").

18.     On or about February 5, 2009, Carter filed a chargeback dispute of the Carter Transaction, claiming services not rendered, with Chase Bank USA, N.A. ("Chase") the financial institution who issued him his VISA™ credit card.

19.     Upon receipt of the chargeback dispute, FDMS transmitted it to CFG.  .

20.     In response to the chargeback, CFG provided certain information to FDMS who then conveyed that information to Chase..

21.     On or about February 16, 2009, Chase wrote to Carter to inquire if he still intended to dispute the Carter Transaction.  In response, Carter advised Chase that the documents CFG provided in response to the chargeback were fraudulent and that he continued to challenge the Carter Transaction.

22.     As a result of Carter's continued challenge of the Carter Transaction, the chargeback remains in full force and effect.

23.     CFG breached the Agreement by accepting the Carter Transaction, which was irregular because it was substantially in excess of the average dollar volume of transactions as CFG represented to FDMS in the Agreement.

24.     CFG has violated the Program Guide (at Sections 10 and 19) by refusing to reimburse FDMS and/or assume liability for the chargeback arising out of the Carter Transaction.

25.     CFG has further violated the Program Guide (at sections 10 and 19) by making an ongoing claim to the $99,999.99, monies funded by FDMS, when the Program Guide definitively prohibits CFG from doing so.

26.     An "event of default" (at Section 23) has occurred under the Program Guide because: (i) CFG incurred an excessive chargeback that increases FDMS' exposure from chargebacks and presents a financial risk to FDMS; (ii) CFG accepted the Carter Transaction which was irregular because it was substantially in excess of CFG's represented average credit card transaction; and (iii) CFG precluded TCF from funding FDMS on the chargeback associated with the Carter Transaction.

27.     TCF is currently holding the proceeds of the Carter Transaction and has sought to interplead those funds due to the competing claims for the funds.

## COUNT I
## DECLARATORY JUDGMENT/RELIEF
## (AGAINST CFG)

28.     FDMS restates and realleges paragraphs 1-27 above as though set forth in full herein.

29.     FDMS brings this claim for declaratory relief under 28 U.S.C. § 2201 to resolve an actual controversy between FDMS and CFG regarding the obligation of CFG to pay FDMS $99,999.99 to satisfy its chargeback obligations under Sections 10 and 19 of the FDMS Program Guide, respectively.

30.     Sections 10 and 19 of the Program Guide impose a contractual obligation on CFG to pay FDMS for all chargebacks and costs associated with CFG's chargeback liabilities.

31.     In breach of its express contractual obligations to FDMS under the Program Guide, CFC has refused to pay FDMS its chargeback liability and has prohibited TCF from funding the chargeback liability for the Carter Transaction.

32.     FDMS seeks a declaration by this Court that it is entitled to the proceeds of the Carter Transaction currently being held in escrow by TCF as provided for by the Program Guide and that CFG must promptly fund FDMS for all chargeback costs arising out of the Carter Transaction.

33.     By way of further relief, under Sections 26.1 and 26.2 of the Program Guide, FDMS seeks an award from CFG of the attorneys' fees and costs that it has expended in prosecuting this claim for a declaratory judgment.

**COUNT II**
**BREACH OF CONTRACT**
**(AGAINST CFG)**

34.     FDMS restates and realleges paragraphs 1-33 above as though set forth in full herein.

35.     CFG breached Sections 10.1.1, 19.1, and 23 of the Program Guide by, among other things, (i) incurring an excessive chargeback that increases FDMS' exposure from chargebacks and presents a financial risk to FDMS; (ii) accepting the Carter Transaction which was irregular because it was substantially in excess of CFG's

represented average credit card transaction; and (iii) prohibiting TCF from funding FDMS on the chargeback associated with the Carter Transaction.

36.     CFG has defaulted on its contractual obligations under the Program Guide because, in violation of Sections 23.4.1, 23.4.4, and 23.4.5 of the Program Guide, CFG has: (i) incurred an excessive chargeback that increases FDMS' exposure from chargebacks and presents a financial risk to FDMS; (ii) accepted the Carter Transaction which was irregular because it was substantially in excess of its represented average credit card transactions; and (iii) prohibited TCF from funding FDMS on the chargeback associated with the Carter Transaction.

37.     As a direct and proximate result of CFG's breaches of the Program Guide, as well as its material defaults under the Program Guide, FDMS has suffered damages and will continue to suffer damages in an amount in excess of $99,999.99.

38.     As a direct and proximate result of CFG's breaches of the Program Guide, as well as its defaults under the Program Guide, FDMS is entitled to recover its attorneys' fees and costs under Sections 26.1 and 26.2 of the Program Guide for prosecution of their claim for breach of contract against CFG.

## DEMAND FOR RELIEF

**WHEREFORE**, plaintiff, First Data Merchant Services Corporation, seeks a declaration that it is entitled to the proceeds of the Carter Transaction currently being held in escrow by TCF National Bank, and that defendant, Community Finance Group, Inc., must pay First Data Merchant Services Corporation all costs associated with the chargeback, and also a judgment against defendant, Community Finance Group, Inc., for

breach of contract, in an amount in excess of $99,999.99, plus attorneys' fees, costs, expenses, and such other relief that the Court deems just and appropriate.

Dated:  March 6, 2009

**s/Matthew R. Salzwedel**
Charles N. Nauen, MN #121216
Matthew R. Salzwedel, MN#312903
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Ave. South, Suite 2200
Minneapolis, MN  55401
Telephone:  (612) 339-6900
Fax:  (612) 339-0981
mrsalzwedel@locklaw.com

Joshua Horn
FOX ROTHSCHILD LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103
(215) 299-2000
jhorn@foxrothschild.com

*Attorneys for Plaintiff First Data Merchant Services Corporation*