UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| First Data Merchant Services Corporation, a Florida corporation,<br><br>Plaintiff,<br><br>v.<br><br>Community Finance Group, Inc., a Minnesota corporation,<br><br>Defendant. | Court File No.: 09-539 DSD/FLN<br><br>**MEMORANDUM OF LAW OF FIRST DATA MERCHANT SERVICES CORPORATION IN OPPOSITION TO COMMUNITY FINANCE GROUP, INC'S MOTION TO ENFORCE SETTLEMENT** |

## I.   INTRODUCTION

Community Finance Group ("CFG") has moved for an Order enforcing a purported settlement agreement between CFG and First Data Merchant Services Corporation ("FDMS"). The purported settlement agreement is based on communications between CFG and Transworld Systems, a collection agency that had no express or implied authority to settle this mater on FDMS' behalf. Moreover, Transworld withdrew the purported settlement offer prior to CFG's acceptance. Accordingly, no settlement agreement was ever reached between the parties and CFG's motion must be denied.

## II.   FACTUAL BACKGROUND

### A.   The Underlying Dispute

On or about February 25, 2008, CFG executed a merchant processing application and agreement (including a Program Guide) with FDMS (collectively, the "Agreement"), pursuant to which FDMS agreed to process debit card and VISA™ and MasterCard™

credit card transactions for sales made by CFG.  In the Agreement, CFG represented to FDMS that its average VISA™ and MasterCard™ credit card transactions were in the amount of $350.00.  Andrew Vilenchik ("Vilenchik"), general manager for CFG, signed the Agreement on behalf of CFG in two separate locations.  In both instances, Vilenchik acknowledged CFG's agreement to be bound by the Agreement.

The Agreement provides in pertinent part that CFG is solely responsible for all chargebacks.  See Section 10.1.1 of the Program Guide attached to the Affidavit of Joshua Horn, Esquire as Exhibit "A" (the "Horn Affidavit").  The Program Guide further provides that CFG is responsible for reimbursing FDMS for all transactions that are charged back to CFG.  Id. at 19.1.  Finally, with respect to a chargeback, CFG's sole recourse is against the cardholder who initiated the transaction.  Id. at 10.1.1. and 10.1.3.

On or about October 8, 2008, CFG accepted a VISA™ credit card transaction from Greg Carter ("Carter") in the amount of $99,999.99 (the "Carter Transaction").  Carter disputed the Carter Transaction, resulting in a chargeback against CFG.  In response to the chargeback, CFG provided certain information to FDMS which conveyed that information to Chase Bank USA, N.A. ("Chase"), the financial institution who issued Carter his VISA™ credit card.  The chargeback was upheld, but CFG refused to fund the chargeback as the Agreement required.  In accordance with VISA™ Association Rules, on or about March 13, 2009, CFG sought relief from the chargeback through the VISA™ Pre-Arbitration process.

On or about March 4, 2009, TCF National Bank ("TCF") commenced an action in interpleader (No. 09-518) because TCF is currently holding the proceeds of the Carter

Transaction and will not release those funds due to the competing claims for the funds (the "TCF Action"). FDMS commenced these proceedings against CFG on or about March 5, 2009 because CFG breached the Agreement by, among other things, submitting the Carter Transaction and refusing to fund the chargeback.

**B.     CFG Loses Its Appeal With VISA™ And Only Has Rights To Pursue Carter.**

On or about June 16, 2009, VISA™ arbitration ruled in favor of Carter and upheld the chargeback. A true and correct copy of the June 16, 2006 arbitration award is attached to the Horn Affidavit as Exhibit "B". Under the VISA™ Association Rules, CFG had a right to appeal the arbitration award, which it did on or about July 9, 2009. In light of the fact that FDMS was required to submit any appeal documents on behalf of CFG and counsel for FDMS was away on vacation, FDMS permitted, on a one-time basis, direct communication from counsel for CFG in order receive and submit CFG's appeal documentation to VISA™.

Considering the fact that the appeal decision would be dispositive of the parties' respective rights on the Carter Transaction and the funds being held by TCF, the parties agreed to stay these proceedings and the FDMS Action. In other words, if the chargeback was upheld, FDMS would be entitled to the funds being held by TCF so that FDMS could fund the chargeback. Conversely, if the appeal ended in favor of CFG, the chargeback would be reversed and the funds held by TCF released to CFG. In short, disposition of the appeal would dispose of both these proceedings and the TCF Action. Accordingly, the Court stayed all proceedings in order to let the appeal process run its course. That process resulted in a determination, on or about September 2, 2009, that

upheld the chargeback against CFG. On or about September 14, 2009, three days before CFG entered into the purported settlement agreement with Transworld, FDMS advised CFG of that determination. See Appeal Ruling attached to the Horn Affidavit as Exhibit "C".

**C.  CFG And FDMS Did Not Settle Their Dispute.**

FDMS and NCO Financial Systems, Inc. n/k/a Transworld Systems ("Transworld") are parties to a Collection Services Agreement (the "Collection Agreement"), which is attached to the Affidavit of John Collins as Exhibit "A" (the "Collins Affidavit"). The Collection Agreement expressly limits Transworld's authority to compromise or settle any account receivable in excess of $12,000.00. See Collection Agreement at ¶2(g). In fact, Transworld could only settle a debt over $12,000.00 with the express written consent of FDMS. Id. Importantly, Transworld never sought and never received the written consent of FDMS to settle any claim with CFG. See Collins Affidavit at ¶¶7-8. As a result, Transworld lacked any authority to enter into the purported settlement agreement with CFG. Id. Moreover, even if Transworld had authority to enter into the purported settlement agreement, Transworld withdrew its offer of settlement on September 16, 2009, one day before CFG attempted to accept the offer in writing. Id. at ¶9. On September 16, Transworld wrote that "[a]ny arrangements negotiated by Transworld Systems are null and void." Id. at Exhibit "B". One day later, CFG attempted to accept the repudiated offer.

CFG was fully aware that the instant action had been stayed in order to pursue the dispute through the VISA™ arbitration and appeal dispute resolution process, CFG's sole

412092.1                                4

avenue for relief on a chargeback. At the time that Transworld first contacted CFG, Vilenchik and his counsel knew FDMS was represented by undersigned counsel. Boris Parker, counsel for CFG, had been in continual contact with counsel for FDMS during this time. CFG did not contact counsel for FDMS to discuss the communication it received from Transworld until September 15, 2009, purportedly days after CFG and Transworld allegedly engaged in settlement discussions, but after VISA™ ruled against CFG on its appeal – a decision that fixed CFG's only recourse as against Carter.

The initial contact from Transworld is clearly a form collection letter. Before trying to take advantage of an obvious error, CFG should have contacted counsel for FDMS to discuss the letter as the parties have been in constant communication since March 2009. The error should have been even more transparent because CFG was notified of the appeal decision three days before it decided to accept the purported offer. Once VISA™ ruled on CFG's appeal, there was nothing left to settle; CFG lost any claim to the chargeback funds being held by TCF. CFG's only recourse is against Carter alone. Putting aside the fact that CFG lost its appeal, Transworld repudiated the offer before CFG communicated its acceptance in writing. If anything, CFG is attempting to take advantage of a clerical error to avoid the impact of the decision of VISA™ on appeal. Accordingly, there was no settlement and CFG's motion must be denied.

### III.   ARGUMENT

CFG's entire argument that it has settled the claims in these proceedings with Transworld is built on a house of cards without any true support.[1]  The entire premise of CFG's argument is that Transworld contacted CFG and, therefore, was fully authorized to settle this matter.  Importantly, Transworld had no actual, apparent or implied authority to settle this matter.  Indeed, the contract between Transworld and FDMS disavows any authority for Transworld to resolve this matter without FDMS' prior express written consent, consent that was never provided to Transworld.  CFG has also ignored the fact that Transworld repudiated any offer in advance of any written acceptance on the part of CFG.  In addition, VISA™ decided against CFG on CFG's appeal in advance to any purported settlement between it and Transworld.  As a result, there was nothing to settle, CFG lost its claim to the funds being held by TCF.  The motion should, therefore, be denied as CFG's only recourse is against Carter.

With respect to an agent's ability to settle a matter for its principal, "'[a]uthority to do an act can be created by written or spoken words or the conduct of the principal which, reasonably interpreted, causes an agent to believe that the principal desires him [or her] to act in a particular manner on the principal's account.'"  Turner v. Burlington Northern Railroad Co., 771 F.2d 341, 345 (8th Cir. 1985) (quoting System Investment

---

[1]   In light of the fact that lead counsel was in trial from October 5 through and including October 16 and CFG's motion is dispositive in nature, local counsel for FDMS called counsel for CFG and left a message to request an extension of time to respond and a corresponding extension of the motion hearing date.  Counsel for CFG did not respond.  Local counsel for FDMS then memorialized this request in an email dated October 16.  Counsel for CFG refused this request.

Corp. v. Montview Acceptance Corp., 355 F.2d 463, 466 (10th Cir. 1966)). "'Agency is a legal concept which depends on the manifest conduct of the parties, not on their intentions or beliefs as to what they have done.'" Id. (quoting Restatement (Second) of Agency § 1 comment a (1958)).

Unlike actual or express authority, apparent authority may exist where the "principal . . . [holds] out the agent as having authority, or must have knowingly permitted the agent to act on its behalf. Proof of the agent's apparent authority must be found in the conduct of the principal, not the agent." Four D, Inc. v. Dutchland Plastics Corp., 2003 U.S. Dist. LEXIS 5898, *11 (D. Minn. April 8, 2003). The court in Four D further explained that apparent authority could be demonstrated through "the sort of 'statements, conduct, lack of ordinary care, or other manifestations of the principal's consent' . . . whereby third persons [would be] justified in believing that the agent [was] acting within his authority." Id. at *10. "'No agent by his own act can create evidence of authority.'" Id. at * 12 (quoting West Concord Conservation Club, Inc. v. Chilson, 306 N.W.2d 893, 897 (Minn. 1981)). A person dealing with an agent of the principal must, however, also determine the scope of the agent's authority. See North Star Mutual Insurance Co. v. Zurich Insurance Co., 269 F. Supp. 2d 1140 (D. Minn. 2003). "[Minnesota] has always placed the burden of reasonableness, and diligence, upon any person dealing with an agent to examine whether that agent has the authority to complete the proposed act." Id. at 1153.[2]

---

[2] The court in North Star determined that the applicable contract provided that the agent lacked actual authority to bind the principal. Id. at 1151. The North Star court also

As an initial matter, the Collection Agreement imparted no actual, apparent or implied authority to Transworld to compromise the claims against CFG on behalf of FDMS. Specifically, Paragraph 2(g) of the Collection Agreement only permitted Transworld to compromise a matter, **without FDMS written consent**, if the amount at issue was $12,000.00 or less and Transworld resolves the matter for at least 75% of the amount at issue. In view of the fact that Transworld purported to collect on an amount in excess of $100,000.00, FDMS was required to provide Transworld with its written consent to resolve such a claim. There can be no dispute that FDMS never provided Transworld with that written consent. See Collins Affidavit at ¶¶ 7-8. Moreover, once FDMS learned about the communication between Transworld and CFG, Transworld wrote to CFG and repudiated any settlement offer, which occurred one day before CFG attempted to accept the offer in writing and three days after FDMS forwarded notice of the appeal decision to CFG. Clearly, FDMS did not allow Transworld to act on its behalf. If anything, the Collection Agreement and the conduct of FDMS demonstrate that Transworld had no authority to resolve the claims in these proceedings on behalf of FDMS.

CFG also made no effort to determine the authority of Transworld before attempting to engage in settlement negotiations. Specifically, counsel for CFG and FDMS had been working together since March 2009 after the commencement of these proceedings. Counsel for all the parties agreed to stay these proceedings to allow CFG to

---

defined implied authority as "powers that are directly connected with or essential to carry out the agent's expressly delegated duties." Id. at 1153.

exhaust its appeal rights through the VISA™ arbitration and appeal process, which would be dispositive as to the money being held by TCF.  Transworld did not contact CFG until after these proceedings were stayed pending the disposition of the appeal by VISA™.  Notwithstanding the fact that counsel for FDMS had been fully engaged, counsel for CFG did not contact FDMS' counsel to inquire why Transworld contacted CFG.  Instead, counsel for CFG waited to contact counsel for FDMS until after CFG engaged in discussions with Transworld.  CFG made no effort to determine the authority of Transworld before attempting to resolve these proceedings.  Instead, CFG has attempted to take improper advantage over an obvious error.

   The unreasonableness of CFG's actions are further demonstrated by the fact that CFG did not communicate, in writing, any intent to accept the alleged offer of Transworld until: (1) after VISA™ disposed of CFG's appeal against CFG; and (2) Transworld repudiated the offer it purported to make to CFG.  Dissatisfied that the disposition of CFG's appeal has left CFG with its only recourse against Carter, CFG has attempted to take advantage of an obvious error when it no longer has any legitimate claims to the money held by TCF.  The impropriety of CFG's conduct is only further exemplified by the fact that CFG's counsel delayed contacting counsel for FDMS until CFG engaged in settlement discussions with Transworld.  Surely, counsel for CFG should have questioned why his client received a collection letter from Transworld when these proceedings were stayed and counsel for CFG only had (with one exception) contact with outside counsel for FDMS since March 2009.  The only logical answer is that CFG knew that Transworld had no authority to pursue collection efforts on FDMS'

behalf.  This Court should not permit CFG to take advantage of an obvious error; instead, the Court should deny CFG's motion.

Dated:  October 22, 2009

**s/Matthew R. Salzwedel**
Charles N. Nauen, MN #121216
Matthew R. Salzwedel, MN#312903
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Ave. South, Suite 2200
Minneapolis, MN  55401
Tel:   (612) 339-6900
Fax:   (612) 339-0981
cnnauen@locklaw.com
mrsalzwedel@locklaw.com


Joshua Horn
*Admitted pro hac vice*
FOX ROTHSCHILD LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103
Tel:   (215) 299-2000
Fax:   (215) 299-2150
Email:  jhorn@foxrothschild.com

*Attorneys for Plaintiff First Data Merchant Services Corporation*